RECEIVED

PC SCAN PC 2

8/29/2019

EC

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**1:19-CV-05921**
JUDGE DURKIN
MAGISTRATE JUDGE FUENTES

DeVon Chew

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

Case No:_____
(To be supplied by the Clerk of this Court)

I.D.O.C., MAURICE Buler, S. Williams,
A. Thomas, J. Porter, Charles F. Best,
Amy R. Gomes, Sherwin K. Miles, ~~Matthew~~,
1. Roling, M. Sharp, A. Vergara,
Debbie Knauer, Rob Jeffreys,
"John"/"Jane" Doe, "Jane" Barnes

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

CHECK ONE ONLY:

✓    COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
     U.S. Code (state, county, or municipal defendants)

_____    COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
         28 SECTION 1331 U.S. Code (federal defendants)

_____    OTHER (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I. **Plaintiff(s):**

A. Name: DEVON CHEW

B. List all aliases: CHARLES CHEW

C. Prisoner identification number: R27399

D. Place of present confinement: LAWRENCE C.C.

E. Address: 10930 LAWRENCE Rd. SUMNER, IL 62466

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**
(In A below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in B and C.)

A. Defendant: I.D.O.C

Title: The Illinois Department of Corrections

1301 Concordia Court P.O.B.×19277
Place of Employment: Springfield, IL 62794-9277

B. Defendant: S. Williams (⊕ I.D#12882)

Title: Correctional Officer at Prison

Place of Employment: Stateville, N.Z.C

C. Defendant: Maurice Boler (I.D#11340)

Title: Correctional Officer at Prison

Place of Employment: Stateville, N.R.C

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

Revised 9 2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Title: Lt. of Internal Affairs
Place of Employment:

Defendent: M. Roling (ID#11995)
Title: Internal Affairs Officer
Place of Employment: Stateville, N.R.C

Defendent: M. Sharpe
Title: Internal Affairs Officer
Place of Employment: Stateville, N.R.C

Defendent: A. Vergara
Title: Internal Affairs Officer
Place of Employment: Stateville, N.R.C

Defendent: Debbie Knauer
Title: Administrative Review Board (A.R.B) Petson — at Springfield (Springfield)
Place of Employment: Illinois Department of Corrections

Defendent: Rob Jeffreys
Title: Acting Director at Springfield
Place of Employment: Illinois Department of Corrections (Springfield)

Defendent:
Title:
Place of Employment:

Defendant: A. Thomas
Title: Correctional Officer at Prison
Place of Employment: Stateville, N.R.C

Defendent: J. Porter
Title: Lt. at Prison
Place of Employment: Stateville, N.R.C

Defendent: Sherwin K. Miles
Title: Chief Administrative Officer (Head Warden)
Place of Employment: Stateville

Defendent: "Jane" Bonds Barnes
Title: Assistant Warden (Head of N.R.C)
Place of Employment: Stateville, N.R.C

Defendent: Charles F. Best
Title: Chair-Person of Adjustment Committee
Place of Employment: Stateville, N.R.C

Defendent: Amy R. Gomez
Title: Adjustment Committee
Place of Employment: Stateville, N.R.C

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: _____

_____

B. Approximate date of filing lawsuit: _____

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _____

_____

_____

D. List all defendants: _____

_____

_____

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _____

F. Name of judge to whom case was assigned: _____

G. Basic claim made: _____

_____

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _____

_____

I. Approximate date of disposition: _____

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9 2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IV. Statement of Claim:

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

I, DEVON CHEW will show in this claim that My Constitutional Rights was violated in a Excessive Force, Assault and Due Process violation. The Excessive Force assault on me involved a series of Wrongful acts, Not limit to the Excessive Force assault. Which resulted in the violation of My Due Process, on a "Official" level. (Correctional Officer Personel, Internal Affairs Personel, Committee Hearing Personel, Administrative Personel, Director) Some Officials was well aware of the substantial Risk of "Something" happening to me at the location where it happen. Yet, those failed to make appropriate steps to protect me from the obvious danger. that was in position, put in place to attack me. All that was involved showed a total unconcern For My welfare after the incidents took place - time and time again - even after I put in writing the legal arguments in the officials, and/or the Administrative Face I was attacked, and done anything wrong to be attacked. Therefore their lack thereof, should be the equivalent of wanting harm to me as the attack itself.

I, believe that this claim of My Violation of My Constitutional Rights under the 8th and 14th Amendments should be first viewed from the date of March, 26, 2019, when The Department of Corrections/IDOC Administrative Review Board (A.R.B) Receive And "Receipted" My Grievance

4

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

About an incident. (Which is loosly wrote about this claim. Where I wrote up two Internal Affairs ⁰/o. M. Roling And A. Vergara. Because of the two I.A ⁰/o conduct, writing ME A Disciplinary Report, and while violating my privcy with the D.R in contacting "PREA" about another ⁰/o) In the Grievance (Exhibit A) I clearly states in the "Relief Requested" that I did not want to be place in Stateville, N.R.C again. I had futher put at the end of that same Grievance that I feared for my safety, and/or that I thought that It would get worst For ME if I stayed at Stateville, N.R.C NOW A Month after I.D.O.C received that Grievance, at Stateville, N.R.C on 4-26-19 at the approx time of 2:35PM. While I was coming from A visit, on my way back to my living unit. I was being lead through the Receiving area of N.R.C with approx 12 other inmates and 3 ⁰/os. As we all was going through, we passed a cart filled with property "brown bags". A few of the other I/m's grabbed some of the bags, as we all rounded the corner. (We was now in view of the staging hallway camera) ⁰/o Williams began to yell very loudly: "Put that back! Put that back! You got ME Fucked up! I saw you." ⁰/o Williams then rounded the corner himself, passing other I/m's. But stoped in front of ME and stated: "Give it to ME, give it to ME Now. Right now!" The ⁰/o was very loud and in my personal space. I calmly told the ⁰/o that I didn't know what he was talking about, and I didn't have anything. ⁰/o Williams then said: "I'm not about to play with you." Before I knew what was happening, the ⁰/o grabbed me by the shoulders, being excessivly forcefully turning ME around hard against the wall. When I felt my face hit the wall hard, I pulled away, out of his hands. I

5

Revised 9 2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

asked the C/o not put his hands on. (I knew putting his
hands on me was not allowed. C/o William did this all without
asking/telling me once to turn around) The C/o then stated; "You
dont tell me what to do, I tell you. You refusing to be search?"
As C/o Williams was yelling this in my face, another C/o walked
up. The new C/o then told me turn around - to be search - I
did what was told of me, without words. (All of this was on the
over head camera. Let the Record show) More words was said as
we all began to walk again. C/o Williams berated me the whole way
to my living unit, saying things like; "You gone hit me? Hit me! Hit me
Mark, Mark, Mark!" As we came to my living unit, the C/o made another
big scene, telling the Sgt's to walk me to Segregation. When
that didnt happen, C/o Williams took my I.D card, to write me A.D.R.
I then went to my cell, approx 10 min. of being there, C/o Williams came
to my cell to bring me my I.D. The C/o then threw the I.D through the side
of the door, he then said; "Dont trip, I got something for you. Real soon. You
gone be the last ticket I write before I retire." He laughed before he
walked off. I immediately feared for my safety. (All of this was on the camera
of F-wing. I was in cell 306. Let the Record show)
   That was the first incident that day, yet not the last. The latter
also involved C/o's and Physical contact/excessive force/violent Assault.
Which was in the same exact location as the first incident. I am trully in the
belief that two incidents, in the same location, by 3 C/o was of no coincidence
I trully believe the latter incident was a plan attack on me and my
safety and/or life, And I will show in this claim not only the attack
but also the ploy to excessive force/Assault.

Also on the date of 4-26-19, at approx 7:45 pm—approx 5 to 6 hours after the first incident—in the same location as the first. Yet, this time I was coming from the shower, trying to catch up with the rest of the line of I/M's. I was rounding the corner, on the way to the living unit. This was in the staging/receiving hallway, where I made it to the end of the line. (The hallway camera shows the whole hallway, from the threshold in which I came through. I came to a stop at the line, put my shoulder on the wall, and was not talking in the hall at all, doing everything right I was suppose to be doing. Let the record show) As I was leaning on the <u>the wall</u> C/O Boler (which I didnt know the C/O by name at that time) asked me was I the last out the shower, I told the C/O that I didnt know. C/O Boler then stated; "What you mean you dont know, you didnt see no Dicks?" He then started laughing at what he himself thought was a joke—which I did not— as he backed up on the opposite wall. I was immediately offended and shocked by the C/O comments. (There was 15 other I/M's and one other C/o. C/o A. Thomas—Which I did not know C/o Thomas by name at that time) I then stated; "Dont play with me like that. You dont know me." C/o Boler then said; "You not nobody. You heard what I said." With me being embarrassed, I said; "How you know I'm not gay, and I just like you." (Now I understood that only 2 things should've happen then: 'C/o' Boler would take full control of the situation by writing me a D.R, and/or call for a Lt. to have me walked to seg.[2] Boler would take full control, seeing his mistake in his own comments—that started this—come off his comments and deescalate the situation. Yet, instead none of the above happen. But the total opposite did) C/o Boler became real serious with his words and demeanor, then said; "Shut the fuck up and turn yours ass around." I was

again shocked that the c/o would take this position, seeing as though
he was the one started the whole thing. I then said; "Why you had now, you
the one started talking to me." c/o Boler stated; "Shut the Fuck up!" I then said; "
Who do you think you talking to. Because I'm not a kid." c/o Boler then belittled
me with a challenge, by stating; "You not gone do shit, so shut the Fuck up!" I
then said; "And neither is you." Boler then stated; "O, yeah?!" (c/o Boler actions
was unbecoming of a officer, especially here after. Because it was here that
I realize this situation was not the typical circumstance between a c/o
and a I/m, and that I was not going to get out of this as easy as I got
in. I felt I would have to see this through, because I felt no way
of reasonable opportunity to escape from the future excessive force/assault
This incident felt as though this was between two men on the
streets, instead of c/o and I/m. And to support my claim that the actions
of the 3c/o's and the Lt. was premeditated, I will give 8 obvious examples
- as I explain the rest of my claim - that's on record from the incident of
the excessive force/assault, and violation of Due Process) At this time c/o
Boler was still leaning on the opposite wall as I was. ① c/o Boler then
put down his water bottle, and advance on me, almost like a animal. The
video will show that his movements was "stalk" like, as the c/o half circled
me. By the time Boler stoped, I was now turned with my back facing the
others in the hallway, and the camera. (The video will show that I never
to a step toward the c/o - at all - in a threating way. Let the record show)
Boler walked up to me, got in my face and said; "What you want to do, you
not on shit." I then said; "What you want to do." At that point I could
not think of nothing else to say. Because I definitely did not want to
hit the c/o, and/or fight the c/o. ② c/o Boler then backed up from me, took

off his watch, exhaled hard and loudly. And in all in one motion, stepped back up to me while swinging on me with a closed fist. Hitting me on the right side of my jaw, with his left hand. The hit shocked, surprise and stubbed me. When I came back to my senses, I did go after the C/o. Because I knew nothing else to do. I went into the "Flight, Fight or Freeze" method, and I chose to Fight off instinct alone. Because I was hit First and I felt attacked by C/o Boler for no reason.

"A officer has an affirmative duty to intervene and prevent the unlawful use of force by other officers in his/her presence, and disregard of that duty can result in liability"

③ The whole time C/o A. Thomas said and/or did nothing to deescalate the incident from the start. By simply stoping C/o Boler before the C/o hit me, or before Boler had gone ~~further then~~ to do more to me. C/o Thomas could've cuffed me up, and/or call for a Lt. to help deescalate the incident. It was as if C/o Thomas was not there, until he was there. Yet, C/o was there the whole time. But it was though he waited for his opportunity once my back was to him. (As if that was the plan the whole time. Especially the way C/o Boler half circled me, and only stop when my back was to C/o Thomas) Because then, and only then did C/o Thomas take his chance to get involve, but the way he saw fit. Before I could even get close to C/o Boler to do anything, from behind me Thomas struck me twice on the right side of my jaw – the same side as C/o Boler hit – with what felt like a close fist. At the same time as C/o Thomas was striking me, C/o Thomas was simultaneously was throwing his weight on me, in a "take down" fashion. Once I hit the floor hard – out of nowhere about 9 C/o's and 3 Lt's came down on

top of me. It was then that I learned that it was a over head camera in hallway, by hearing Lt. Adems state; "Its a camera over yall head dont do nothing to him. Get off him." I was then picked up and walked to the Health Care unit to be looked at.

④ I was walked by two Lt.'s, one being Lt. Porter. Once I was there, I was placed in a bullpin, with the cuffs still on me. The cuffs was on so very tight, that the cuffs was cutting in my wrist. (I still have those scars on my wrist today) For a approx 30 min. I kept in cuffs, asking the %o in health care to take the cuffs off; because they was too tight. That %o told me, I had to wait for Lt. Porter to return. (Lt. Porter would not let no one else deal with me) During the time I was waiting to be seen, %o Thomas came to the bullpin to get my name. When I did not say nothing to him, because I then recognize the %o. %o Thomas then said; "Keep that up, keep your mouth shut about this, and it might not get worst for you. (This was on the camera in the Health Care unit Let the record show) Lt. Porter finally came to take me to be seen, and take the cuffs off. (I had a knot on my right side of my jaw, from being hit 3 times, cuts and abrasions on both wrist from the cuffs, with some nerve damaged. And some back pain. This was all on record, done by the nurse. Let the record show) This is where Lt. Porter sat down with me - as I was being seen - and ask me what happen with me in the hallway with the %o's. Lt. Porter basically interviewed me himself, - right there in Health Care unit - I told him that I was attacked by "his" %o's. I told Lt. Porter everything that happen, the Lt. ask me then, did I hit any one of the %o's. I ask him to "please look at the camera. Lt. Porter told me that

he would "take care" of the situation, for me not to worry. He then took me back to the bullpin. Approx a 1 hour 1/2 later Lt. Porter came to "talk" me into being walked to Segregation, I didn't want to go because I felt I did nothing wrong. He gave me his word that he personally would bring me all my property, and that "he" would have Internal Affairs come talk to me. Lt. Porter himself brought me my property. At approx 45 min. of me sitting in the cell, a % from I.A came to get me, to take me to be interview room (All of this is on the Seg. wing camera. Let the record show)

Once I was then taken to the I.A, there was a man there. As I walked in the room with the % from I.A, the man said to the % from I.A; "⑤ I just watch the whole video, Boler falsified his whole incident report. Get him in here, I want to talk to him first." The man had the I.A % take some pictures of my wrists, and jaw. The man then introduce himself as a "State Investigation." (I do not remember his name. But it should be on record of my incident report, I sign it and so did the man) He told me that he chove 3 hours to come talk to me, he then told me to tell him what to me. I told him everything I could remember at that moment, (I especially didn't tell him about the early incident with % Williams. Because I did not put that together until days later when I receive the D.R from % Williams. It was then, and only then did I remember what % Williams told me at my door. Up until then I thought it was over between Williams and my self) The interview lasted about 1 hour, with 4 pages of reports to sign. The man showed me pictures of % Boler and % Thomas. (I also sign a consent form to take a polygraph test. The pictures is how I learned the names and

Faces of % Boler and % Thomas. Let the Record show) As the interview was coming to an end, I told the S.I about me talking to Lt. Porter, and all that Lt. Porter was doing to "help" me in the incident. At the time of talking to Lt. Porter, I did not know that there was something wrong with it, and that Lt. Porter shouldn't been talking with me. The S.I call in the I.A %, and asked him who was Lt. Porter, by stating; "Who is Porter? Isn't that % Boler Union Rep?" The I.A % said; "Yes, it is." The S.I then said; "Get Porter in here too, after Boler." I was taken back to Seg.

The next morning I was woken by a D.R sliding through my door, it was written by % Boler, ⑦ with % A. Thomas as a "witness" ⑧ and Lt. Porter as the "Reviewing Officer." Lt. Porter blatantly ~~be~~ interfered with what he knew was an going investigation as the Union Rep for the opposite side. Then Lt. Porter put his name on the D.R, sending me to Seg. For a D.R that was falsified and should not have been ~~processs~~ processed. % A. Thomas was a "witness" to a situation that never happen, and/or to a D.R that was put together, at best. Yet, the D.R was processed, with falsified accusations and bogus signatures. Which should be a obvious violation of my 8th and 14th Amendments. The D.R had 5 charges on it, with "violent assault" being the main charge, saying that I "spit" on % Boler. (Let the Record of the video show that % Boler falsified the whole D.R - and I am sure that Boler and Thomas falsified their incident reports as well - I never spit on or at % Boler, nor was I talking or yelling in the hallway. I only "started" talking when I was spoken to by % Boler first. The only thing remotely true on the D.R was of me dropping my property on the Floor) But I was not that worried about the D.R at that time, or being in Seg. I knew I did nothing wrong. And because I "thought" that Internal Affairs would

let me out of Seg. and throw out the D.R., after their internal investigation was over. Or the Adjustment Committee would do the same thing.

That Monday, on the 29th of April, two State Police came to speak with me about the incident on the 26th of April. (Special Agent, Matthew Konow and Troope, Andrew Aquilar) I gave them the same story as I gave the S.I. I did not have to sign anything, but I was given a card by the S.P. It was later that same day I was told that C/o Boler was Fired and walked off the premises, that it was likely that taking off his watch and striking was the reasons. (It was a lot of talk around the whole prison about the incident. Every one either knew who I was by Face and/or by name)

So I was definitely surprise two days later when I was called by the Ajustment Committee to hear the D.R. On May 1 I walked in to hear the D.R, as I walked in the chairperson of the A.C, Lt. Best ask me my name, I told him, he then said; "So "you" Chew huh?" He then read me the D.R wrote by C/o Boler, he then ask me how did I plea, I told him "not guilty". Lt. Best then said; "So you didn't do none of this, that Boler said you did? Then what happen?". I then began to tell what happen who in the hallway with C/o Boler and C/o Thomas, I made it maybe half way through the incident when Lt. Best interrupted me For the First time of many. With questions like, "Did you spit at all?" "Did you threated Boler?" "Was you loud in the hall?" "Did you drop your property?" (I knew the hearing wasn't going my way, with the way Lt. Best was asking his questions. It was obvious Lt. Best did not believe that I had not done nothing) I answered "no" to all but the last question, I stated; "I only droped my property after C/o Boler got in my Face. What

else was I suppose to do?" I also told the Lt. that I would take A polygraph test about my truth. The whole time the hearing was going on there was more then me and the 2 Hearing Officers, when there is only suppose to be the 3 of us. (Sgt. Fox and Sgt. Hill was there, to name a few) The other Hearing member, Amy Gomez said nothing the whole time, its as if she wasn't even there. Gomez was suppose to have been writing down what was being said in the hearing, but the Record only have one line of what I said throughout the hearing. I asked Lt. Best why was I still at N.R.C hearing the D.R. Basically I was not suppose to be hearing the D.R at Stateville, N.R.C, because Nobody there was capable of being impartial. Everybody there had heard about the incident with the 2%'s and I. There could be no impartiality at the hearing Therefore violating My Due Process. (If I knew about Boler getting walked off, then the others knew way more) As the hearing came to a end, I begged Lt. Best to look at the video before he made a decision, he said he would. But on the 'Final Summary' From the Adjustment Committee, the A.C lean heavy on % Boler report from the D.R, when his report was falsified. And only bringing up the video footage pointing out that I dropped My property. Making it seem from the summary that I was so guilty. The Committee Me guilty of the charges, but out the Assault charge. The Chief Admin. S. Miles (Head Warden) sign off on the Committee decision to find Me guilty. This is after I wrote Miles about the incident asking Miles to look at the video. And why wouldn't the Warden sign off when the Committee was appointed by the Chief Admin. These are the people that Miles put in place. So Miles was of their actions.

On May 2 I seen the Asst. Warden Barnes (Head of the N.R.C side) as I was going out for court. I stop to talk to her about the incident, wanting to be let out of Seg. She said she knew little about it, so I told her my side, she stoped me and said; "What did you do to make him hit you? Did you spit?" When I continue to explain, I ended with; 7% Boler no longer worked, then why was I still in Seg. Warden Barnes said; "If what you telling me is true, and Boler did get walked out of here. Then I can guarantee you that you not gone get off "scot free" (Warden Barnes had the power to get me out of Seg. But I was again ignored) That same day I sent a written letter to my Mother — through my Lawyer — to have my Mother call to talk with Warden Barnes. So the next day on the 3rd of May while I was coming off the Seg yard, Warden Barnes came to talk to me. She walked up to me — with some attitude — and said; "I talk to your Mother, she told me you are going on a hunger strike. I don't like nor appreciate when Inmates have people calling me. So I went to look at the tape myself. Yes! I seen you throw your stuff down and puff up your little chest. I knew you did something, and I told you you wasn't gone get off 'scot free'. So you can do what you want to do. Dont eat! Dont make U.S no difference, because it aint gone change nothing. Do your Seg. time and get over it." She then just walked off without letting me say anything else to her

From my first day in Seg, to the days after, I really thought Internal Affairs would complete their 'investigation' and clear everything up, letting me out of Seg, and throwing the D.R out as well. But, unbeknowns to me the I.A C/o's never had a investigation of their own going. They

either left it unresolved on the prison level, and/or they let the State Investigator/Police handle it from their level. Had they done their jobs, I would've been shipped out of N.R.C For my safety, (Just as they do when there's a assault on a %) I would've been interviewed by them, I would've been able to tell them about the incident with % Williams. I.A could've pulled both D.R from the record. But they chose to look the other way about the incident, putting me at risk everyday after the day of the incident. I wrote both % Roling and % Vergara twice but I never got a reply. I had seen and talk with % Sharpe the day the State Police came to talk with me, he walked me back to Seg. Sharpe told me that he wasn't the one handling the "investigation," but someone would come talk to me, for me to "sit tight." The Counselor told me me there was no ongoing investigation about the incident. I knew this to be true, because no one came to talk with me before I was shipped out. From the obvious lack of effort, I was force to go through. so many unnecessary life changes. I trully believe that the I.A % chose to ignor the incident was because of the Grievance I wrote on them a few months before. There definitely should've been a investigation about the matter from April 26.

I then receive another D.R days later written by % Williams, from the day of 4-26-19. It had so many charges on it, I then had a hearing soon after. (I was given 6-months Seg for both incidents!) I was then, and only then shipped back to Western Ic because I was only at Stateville N.R.C for court. But once I got back to Western IL C.C. I was shipped again because I had to Much Seg time to be at Western IL CC. (This was Approve by the

Officials of I.D.O.C in Springfield) I was sent to Lawrence C.C. So I am now more far from my family that I was a Westen IL CC. I am still in Seg, where I can not get contact visits, I can not use the phone to talk to my family and/or most importantly my Lawyer. This has all made my stay very un'comfortable and Emotional to say the very least.

Western IL,C.C. is where I Filed My Grievance about the incident, because of filing in Westen IL I was able to send the Grievance straight to the I.D.O.C, Administrative Review Board (A.R.B) in Springfield. Because the incident did not happen in Western IL. So thats what I had immediately did. I felt this was my last and only chance I had left to receive some much needed justice. I explain in the Grievance majority of what I explain in this claim. There was no way that I would be denied with these obvious Facts I had in my favor. (I felt I would be let out of Seg. and put in the position where I could be comfortable and safe) Yet, like the times before this one, this is not what happen. Appro: 1 month of having my Grievance in Springfield (I.D.O.C), the A.R.B sent a Reply to me with a Denial to my Grievance. The response from the I.D.O.C, A.R.B was that my issue with the staff conduct was "moot", and that they found no Findings that there was no violation of my Due Process in my Grievance, and/or throughout the incident itself. The response also said; "This office is Reasonably satisfied the offender committed the offense cited in the report." Even at the final stage of the process, I was still being told that I-myself-was the one in the wrong. As if Everyone did look at the record of video, And not just push the paper work through. Why also push me as

Well through the ringer. And to make matters worst, this time the denial came with – yet again – the signature of the A.R.B, Debbie Knauer, and much worst, The Director Rob Jeffreys. My innocents could be perceive by any reasonable person that would take the time to veiw the record of the video and read through the obvious falsified reports. If the A.R.B member and the Director would've done an investigation, how did they not see the 3 c/o's use excessive force and assault me, how did they not see the falsified reports, how did they not see Lt. Porter involve himself on both sides knowing he is a Union Rep, how did they not see everything else that was wrong with the whole incident. It is impossible not to have seen it. This seem as though the I.D.O.C, A.R.B and the Director went out their way to avoid acquiring unwelcoming knowledge and correcting it. Instead they did what the last group did, deny me for no reasonable reason. Which has to be on the lines of intent to keep the actions of the c/o's of the excessive force and the assault standing. Especially when I told I.D.O.C, A.R.B month before that I fear for my safety at Stateville, N.R.C

For all those involve, to the ones that chose not to get directly involve. There was definitely a violation of my civil Rights in more ways then there was'nt. There was a lot of deliberate indifferents showed throughout the process that I'm still going through. As I write this claim I am again in Stateville, N.R.C for a court writ. There seems to be a consistent effort to keep sending me here from the I.D.O.C in Springfield. I go through so much cruel and unusual punishment, like having to see those

those involve (Lt. Porter, C/o Thomas. To Name a few) I have to show up to My court Room in arm and leg cuffs on because I'M in Seg. I beg the court that opens this case, to Please Consider to grant ME A "Keep Separate From" Stateville, N.R.C. Because I Feel it only can get worst for ME here since this claim is open to the courts. This situation has already has taken a psychological toil on ME and My family.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

V.      Relief:

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite
no cases or statutes.

1). Plaintiff ask for $500,000.°° Compensatory Damages for the incident, + sec. 2) And
$100,000.°° For Puntive Damages for each Defendant involbe in their individual Capacities And
official capacities. 3) Plaintiff also ask to be shipped to the Correction Center of the Plaintiff
Chose.

VI.     The plaintiff demands that the case be tried by a jury.   ☒ YES    ☐ NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this
Complaint are true to the best of my knowledge, information and
belief. I understand that if this certification is not correct, I may be
subject to sanctions by the Court.

Signed this  29  day of  Aug , 20 19

_Deton Chew_
(Signature of plaintiff or plaintiffs)

DeVon Chew
(Print name)

R27399
(I.D. Number)

LAWRENCE C. C.
#10930 LAWRENCE Rd.
SUMNER, IL 62466
(Address)

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]     Revised 9 2007

*The first Grievance before 4-26-19, Where I told I.O.C.C I Fear For My Safety.*

*Ex. A*

*1 of 3*

*19-0364*

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

| Date: 2-14-19 | Offender: (Please Print) DEVON CHEW | ID#: R27399 |

**Present Facility:** WESTERN ILLINOIS C.C. **Facility where grievance issue occurred:** Stateville; NRC

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [x] Other (specify): 8th Amendment Violation

- [x] Disciplinary Report: 1 , 5 , 2019
  Date of Report
  Stateville; NRC
  Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   **Counselor**, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   **Grievance Officer**, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   **Chief Administrative Officer**, only if EMERGENCY grievance.
   **Administrative Review Board**, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** On the date of January, 5, 2019, and approx time of 8:30AM this I/M was pulled out the cell (NRC; RT-01-D4-L1) by a A. Vergara of "internal Affairs." This I/M was then taken to the I.A Investigations office. Once there I/o Vergara began to ask this I/M random questions, (that this I/M "later" find out had nothing to do with the reason this I/M was at I.A in the first place) with out informing this I/M why this I/M was there. Irrelevant questions such as; "Why are you locked up" "Did you do the crime" and; "Where did you get the gun to rob" (Setting the tone that either; "This I/M did something wrong." And/or "that this I/M was wrong for being the reason for the interview") There was no one else in the interview room other then I/o Vergara and this I/M. This I/M then demanded

**Relief Requested:** To never be place in NRC again. To have both D.R's written on that date [strikeout] Expunge. To have both I/o's M. Ruling (1995 and A.Vergara) suspended without pay while there is a investigation. That there be An Immediate investigation in the officer's conduct

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Offender's Signature: Devon Chew | ID# R27399 | Date: 2, 14, 19 |

(Continue on reverse side if necessary)

---

**Counselor's Response** (If applicable)

Date Received: ___/___/___
- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

Print Counselor's Name ___ Counselor's Signature ___ Date of Response ___

---

**EMERGENCY REVIEW**

Date Received: ___/___/___
Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature ___ Date ___

2 of 3

to know why this I/M was at "Internal Affairs". I/C Vergara then became noticebly
irritated and then insolence, stating; "Get your ass up and cuff up." This I/M ask;
"Why?" I/C then began to give a "Direct Order" for this I/M to stand and cuff up.
This I/M followed the order. I/C Vergara then placed the hand cuffs on this I/M. This
I/M then ask what was this I/M in hand cuffs for, I/C then stated; "You had become
insolent in a threating manner." This I/M then ask again, what was this I/M doing
in I.A office. I/C Vergara then - finally began to explain to this I/M exactly why
this I/M was there... To have a "PREA" interview" because this I/M had this I/M
Mother call the PREA hotline. Then the interview was started, with this
I/M telling the I/C this I/M problem, while the I/C wrote down what this I/M was
reporting. (I/C Vergara only wrote down partial of what this I/M reported. I even
had to suspect this I/M story) I/C Vergara never even put the officer in question
Kuszyk 10400 by name in the report. And there was still only the I/C and this
I/M in the office during the interview) This I/M explain to the I/C that this
I/M had his Mother to call the PREA hotline because of the officer in question
was making this I/M "uncomfortable" and that he gave this I/M the "creeps".
As the interview went on, it was obvious to this I/M that I/C Vergara was getting
very "irritated" and "aggravated", and possibly even; "annoyed." At one point
during the interview, I/C Vergara became very irritated and ask this I/M
very aggressively; "I know Kuszyk, he is a pretty good guy. He is a nair- good
officer. What does he do to make you....."Uncomfortable"? (For the rest of the
interview, I/C Vergara antagonize the words of this I/M. Like; "Uncomfortable"
"Creepy", "Calling your I/C Mother", "Fear for your life." At this point, this I/M just
wanted the interview over as soon as possible. Because the I/C was making
this I/M very uncomfortable. Close to the end of the interview, I/C Vergara -
again - stated aggressively "Did he try to rape you." Did he try to get you to
Fuck him. Did he grab your dick, balls, and/or Ass. Did he try to strip
search you without reason. If not you shouldn't have tried to contact PREA
At All!" This I/M thought that PREA was also to prevent i.e. "Elimination".
Yet the I/C made it clear; that this I/M had done "everything" wrong by contacting
PREA) This I/M then stated; "I am very uncomfortable with this I/C, he said,
I does a lot of stuff towards me. And, I am trying to "prevent" something
"extreme" from ha,), leading to me," I/C Vergara then questioned this I/M about
what this I/M had told this I/M Mother over the phone, to have her call the
PREA hotline in the first place. I/C Vergara told this I/M that this I/M shouldn't
have told this I/M Mother that this I/M "Fear for his life", if it was not true. This
I/M then stated; "That I told my Mother what I had to, to get her to call the hot-
line for me. I had to make it sound serious to her. She is a "Civilian". And that
it really didn't matter, or should matter what I told her to say to get me call out.
Because the facts of the reason to get me the "interview" was being discuss right
Now, I didn't want to say everything over the phone, and/or to "her." "My Mother."
I/C Vergara disregarded this I/M statement, then ask; "Do you Fear for your life,
because thats what you told your Mother on the phone... Before you made a 3-way,"

2 of 3

This I/M then stated; "no! I do not fear for my life. But I am very uncomfortable with 'Kuszyk'. He creeps me out." To this point of the interview this I/M was very uncomfortable with C/o Vergara, and this I/M was still in hand cuffs because of the way the interview was going, and there was still no one else in the room other then this I/M and the C/o. This I/M ask; "for the Lt. of Internal Affairs." C/o Vergara told this I/M that he was the only C/o there that day, and that the "Lt." was off that day. [This I/M was later told by other C/'s that there was No "Lt. of Internal Affairs at the time.] As the interview came to an end, the C/o told this I/M to sign the interview sheet, this is when this I/M noticed that the C/o fell to identify C/o Kuszyk 10400 by name in the report.

At no time during the interview did this I/M feel comfortable, this I/M felt that the investigation would not be fair. The C/o made this I/M feel/as though this I/M done something wrong by contacting PREA only to try to prevent "something from happening, the C/o said as much. The reward for contacting PREA, this I/M was teased, badgered, "antagonize", and/or made fun of for this contact. This I/M basically was told that this situation was not "serious enough" to have had this I/M Mother called the hotline. As the C/o was taking this I/M back to his cell, the C/o mention to this I/M about doing a 3-way on the phone, after this I/M told this I/M Mother about the PREA situation. This I/M just brought to the attention that 3-ways was did in NRC 98% of the time. (Every call this I/M made prior to the PREA situation a 3-way was did. So before the situation Internal Affairs could not have been worry about this I/M doing the 3-way calls, and/or could not have been monitoring the calls) This I/M then ask the C/o was he going to write this I/M a I.D.R, the C/o then said, "No, not me." With a "smirk" on his face. Then is when this I/M knew for a fact that this I/M would be retaliated against for making the PREA "complaint."

To prove this I/M theory about the handling of the interview/investigation. This I/M was written two I.D.R's the same day of, about the same situation. The I.D.R was wrote by a C/o that was not even present during none of the interview. (M. Roling 11995) The I.D.R was written the same exact date and time as the interview. So when, where, how there "ever" an investigation conducted? For there to be an "conclusion of ??? (As C/o Roling wrote in the beginning of the I.D.R that he wrote (So they concluded the investigation in a matter of minutes, and/or the hour of the interview? This I/M feels and/or believes that C/o Roling and/or C/o Vergara both conspired against this I/M, and/or abuse their Authority, and/or use "intimidation" or threat towards this I/M with writing of the I.D.R And most importantly, C/o Roling and/or C/o Vergara breech the I/M privcy in the PREA policy by making the "interview sheet" and/or the "phone conversation" reviewable to the Adjustment Committee. This I/M now feels for his safety, because this I/M was still on the wing with the C/o in question. (Kuszyk 10400 NRC T-104). This I/M feels as though now every C/o in N.R.C knows about this I/M trying to contact PREA about another C/o. This I/M feels that it will get worst for this I/M if this I/M stays at N.R.C, Stateville —

E.O.R

*Ex. B*

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Disciplinary Report

| Type of Report: | |
|---|---|
| ☑ Disciplinary ☐ Investigative | Facility: Stateville NRC   Date: 4-26-19 |

Offender Name: Chew, Devon   ID #: R27394

Observation Date: ~~725~~ 4-26-19   Approximate Time: 730   ☐ a.m. ☐ p.m.   Location: Staging hallway

Offense(s): DR 504: 100 Violent assault (t 206 Intimidation or threats, 205
313 disobeying direct order, 404 violation of rules

Observation: (NOTE: Each offense identified above must be substantiated.)  On the above date and approx time this R/o was moving a shower line iron Staging to Unit E while attempting to move the line inmate chew (R27 3997) was talking loudly in the hallway. Inmates are not allowed to talk while lines are being moved. this R/o gave inmate chew a direct order to stop talking and get on the wall, inmate chew did not comply. inmate chew then began to scream that I was a bitch and he would fuck me up. I gave chew another order to stop talking and get on the wall.

Witness(es): A Thomas

☑ Check if Offender Disciplinary Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| | | | | |
|---|---|---|---|---|
| Maurice Roler | 11340 | [signature] | 4-26-19 | 800 ☐ a.m. ☑ p.m. |
| Reporting Employee (Print Name) | Badge # | Signature | Date | Time |

### Disciplinary Action:

Shift Review: ☑ Temporary Confinement   ☐ Investigative Status   Reasons: ___ 718

| | |
|---|---|
| M [signature] Belson | [signature] 4-26-9 |
| Printed Name and Badge # | Shift Supervisor's Signature   Date |
| | (For Transition Centers, Chief Administrative Officer) |

Reviewing Officer's Decision: ☐ Confinement reviewed by Reviewing Officer   Comment:

☑ Major Infraction, submitted for Hearing Investigator, if necessary and to Adjustment Committee

☐ Minor Infraction, submitted to Program Unit

| | | |
|---|---|---|
| [signature] | [signature] | 26 Apr 19 |
| Print Reviewing Officer's Name and Badge # | Reviewing Officer's Signature | Date |

☐ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only):

| | | |
|---|---|---|
| Print Hearing Investigator's Name and Badge # | Hearing Investigator's Signature | Date |

#### Procedures Applicable to all Hearings on Investigative and Disciplinary Reports

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

#### Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☐ Check if offender refused to sign

| | | | |
|---|---|---|---|
| X [signature] | Offender's Signature [signature] | | ID# |
| V [signature] | | | V [signature] |
| Serving Employee (Print Name) | Badge # 13767 | | Signature |
| 4/27/19 | 9:55 | | ☐ a.m. ☑ p.m. |
| Date Served | Time Served | | |

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

| | |
|---|---|
| Offender's Signature | ID# |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)

| | | |
|---|---|---|
| Date of Disciplinary Report | Print offender's name | ID# |

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|

Witness can testify to: _____

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|

Witness can testify to: _____

Page 1 of 2
*Printed on Recycled Paper*

Distribution:   Master File
                Offender

DOC 0317 (Eff. 7/2018)

ILLINOIS DEPARTMENT OF CORRECTIONS
**Offender Disciplinary Continuation Page**

Stateville SB: NRC
Facility

☑ Disciplinary Report ☐ Investigative Report ☐ Disciplinary Summary ☐ Adjustment Committee Summary

Report/Incident Date: 1-26-19     Incident # (if applicable): _____

**Offender Information:**
Offender Name: Chew, DEVON     ID #: R 27399

Use the space below to provide any additional information.

Inmate Chew then throw his personal property on the ground and clinched his fist. Chew Spit at me shortly after. @ this R/O then defended himself while C/O A thomas called for assistance and helped detained inmate Chew.ILM Identified by offender 360.

Charges/Offenses - 100, 206, 304, 313, 404 **

V Jones

1/27/19   955

Page 2 of 2

Ex. C

**Offender Disciplinary Report**

Type of Report: ☑ Disciplinary  ☐ Investigative

NRC Facility

Date: 4·26·19  KB 312

Offender Name: CHEW, Devon    ID #: R 27399

Observation Date: 4·26·19  Approximate Time: 2.35  ☐ a.m. ☐ p.m.  Location: RCC Living Hallway

Offense(s): DR 504: RES DISOBEYING A DIRECT ORDER ESSENTIAL TO SAFTY + SECURITY
DR 601: DISOBEYING A DIRECT ORDER  206, INTIMIDATION OR THREATS 208 DANGEROUS communication

Observation: (NOTE: Each offense identified above must be substantiated.) ON THE ABOVE DATE AND FOR TIME
THIS R/O IS ISSUED THIS TICKET TO INMATE CHEW, DEVON R27399
IDENTIFIED BY I.D. WHILE PASSERBY BY CARTS LOADED WITH
BROWN BAGS INMATE CHEW MADE A JESTURE WHICH SEEMED AS
HE HAD STOLEN ONE. THIS R/O STOP THE LINE ASKED INMATE CHEW
TO TURN AROUND AND BE SEARCHED. INMATE CHEW STARTED SHOUTING
HE DIDN'T TAKE ANYTHING. THIS R/O GAVE SEVERAL DIRECT ORDER
TO INMATE, CHEW TO TURN AROUND FOR A PANT DOWN HE SAID NO
AND FOR REFUSED TO TURN AROUND FOR PANT DOWN. THIS R/O
THIS R/O CALLED FOR ASSISTANCE.

Witness(es): SGT FOX  SGT BLONKEY  SGT CLARK  SEVERAL OFFICERS

☐ Check if Offender Disciplinary Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| Reporting Employee (Print Name) | Badge # | Signature | Date | Time |
|---|---|---|---|---|
| S WILLIAMS | 12887 | S Wille | 4·26·19 | 3pm ☐ a.m. ☑ p.m. |

## Disciplinary Action:

Shift Review: ☐ Temporary Confinement  ☐ Investigative Status  Reasons:

Printed Name and Badge #  ___  Shift Supervisor's Signature (For Transition Centers, Chief Administrative Officer)  Date

Reviewing Officer's Decision: ☐ Confinement reviewed by Reviewing Officer  Comment:

☑ Major Infraction, submitted for Hearing Investigator, if necessary and to Adjustment Committee

☑ Minor Infraction, submitted to Program Unit.

Print Reviewing Officer's Name and Badge #  714  Reviewing Officer's Signature  Date 4/26/19

☑ Hearing Investigator's Review Required (Adult Correctional Facility Major Reports Only)

Print Hearing Investigator's Name and Badge #  5103  Hearing Investigator's Signature  Date 4/27/18

### Procedures Applicable to all Hearings on Investigative and Disciplinary Reports
You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

### Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports
You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☑ Check if offender refused to sign

Offender's Signature  ___  ID#

| Serving Employee (Print Name) | Badge # | Signature |
|---|---|---|
| | 825 | |

| Date Served | Time Served | |
|---|---|---|
| 5/3/19 | | ☐ a.m. ☐ p.m. |

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Offender's Signature  ___  ID#

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)**

Date of Disciplinary Report  Print offender's name  ID#

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|
| | | | |

Witness can testify to:

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|
| | | | |

Witness can testify to:

Printed on Recycled Paper

DOC 0317 (Rev. 2/2007)

Distribution:  Master File
Offender
Facility (2)

State of Illinois - - Department of Corrections
**DISCIPLINARY REPORT/SUMMARY**
(Continuation Page)

Page 2 of 2

☑ Disciplinary Report   ☐ Disciplinary Summary

Committed Person: CHEW   No. R27399

Offense Date: 4/26/19 Time: 230 am/pm Location: HALL Facility: NRC

WITH SEVERAL OFFICERS AROUND AND SEVERAL OFFICER + INMATE
CHEW CONTINUED TO REFUSE TO CUFF UP AND BE SEARCH IN
MATE. CHEW START SAYING THINGS LIKE, I AINT SHAKING
DOWN AND I WILL BEAT YOUR OLD ASS. TALKING DIRECTLY
TO THIS R/O INMATE CHEW STARTED SHOUTING I AINT
DOWN SHIT DONE SHIT YOU PICKING ON ME.
WHILE CONSTANTLY REFUSING TO SHAKE DOWN. AFTER
SOME TIME SGT CLARK ALONG WITH SOME OTHER
SGTs AND STAFF GOT HIM TO CUFF AND SUBSEQUENTLY
LEAD HIM TO A HOLDING CELL THE SITUATION WAS
TENSE, FURASTATING AND DANGEROUS BECAUSE
THIS R/O BELIEVE THAT INMATE CHEW INTENDED TO
CARRY OUT HIS THREATS. HE DARE THIS R/O TO TRY
AND CUFF HIM PERSONALLY AS IF HE WAS TRYING
TO INSTILL FEAR IN THIS R/O. THIS R/O ATTEM
TRYED TO RESOLVE THE ISSUE QUIETLY TO NO AVAIL
INMATE CHEW WAS TOO IRATE IN CONVERSATION
AND OVERLY AGGRESSIVE IN MANNER TO TALK SENSE
INTO X S

END OF REPORT

DC 7212 (Eff. 4/98)   Distribution: 1) Master File; 2) Committed Person; 3) Facility; 4) Facility
IL 426-11612

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

| | | |
|---|---|---|
| **Name:** CHEW, DEVON | **IDOC Number:** R27399 | **Race:** BLK |
| **Hearing Date/Time:** 5/1/2019  08:44 AM | **Living Unit:** NRC-RB-05-12 | **Orientation Status:** N/A |
| **Incident Number:** 201901003/1 - STA | **Status:** Final | |

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 4/26/2019 | 201901003/1-STA | BOLER, MAURICE | NRC-STAGING AREA | 07:30 PM |

| Offense | Violation | Final Result |
|---|---|---|
| 100 | Violent Assault Of Any Person - Staff<br>*Comments:spit on staff* | Deleted |
| 206 | Intimidation Or Threats | Guilty |
| 304 | Insolence | Guilty |
| 313 | Disobeying a Direct Order | Guilty |

| Witness Type | Witness ID  - | Witness Name | Witness Status |
|---|---|---|---|

**No Witness Requested**

## RECORD OF PROCEEDINGS
Inmate Chew R27399 present and DR read. Inmate Chew R27399 stated I didn`t not spit on him or come around the corner yelling. I never clenched my fists. I dropped my property because he circled me and got in my face.

## BASIS FOR DECISION
R/O reflects inmate Chew R27399 refused a direct order to stop talking and get on the wall.
R/O reflects inmate Chew R27399 threw his personal property on the ground and clinched his fist.
The committee reviewed video footage and inmate Chew R27399 dropped his property and clinched his fist in an intimidating manner.
Inmate Chew R27399 identified by ID card.
The committee is satisfied that inmate Chew R27399 did in fact violate the charges 206, 304 and 313.

## DISCIPLINARY ACTION   *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| 3 Months C Grade | 3 Months C Grade |
| 3 Months Segregation | 3 Months Segregation |
| 3 Months Commissary Restriction | 3 Months Commissary Restriction |

**Basis for Discipline:NATURE OF OFFENSE**

## Signatures
### Hearing Committee

| | | Date | Race |
|---|---|---|---|
| BEST, CHARLES F  - Chair Person | *Signature* | 05/01/19 | BLK |
| GOMEZ, AMY R | *Signature* | 05/01/19 | WHI |
| Recommended Action Approved | | Date | Race |

**Final Comments:** N/A

**OFFENDER'S GRIEVANCE**

1 of 5

Ex. E

| | | | |
|---|---|---|---|
| Date: 5-28-19 | Offender: (Please Print) DEVON CHEW | | ID#: R27399 |
| Present Facility: WESTERN Ill | | Facility where grievance issue occurred: Stateville, NRC | |

**NATURE OF GRIEVANCE:**

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ ADA Disability Accommodation

☒ Staff Conduct    ☐ Dietary    ☐ Medical Treatment    ☐ HIPAA (8th and 14th AMENDMENTS

☐ Transfer Denial by Facility    ☐ Transfer Denial by Transfer Coordinator    ☒ Other (specify): EXCESSIVE FORCE AND VIOLENT ASSAULT)

☐ Disciplinary Report: _____ / _____ / _____
               Date of Report                    Facility where issued

> **Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

This Grievance is about the conduct that was Unbecoming of a Official and/or Officer, in the Excessive Force and/or Violent Assault to this I/M, That NOW Still has this I/M in Segregation, And is doing so Either acted directly in the Excessive Force Violent Assault and/or the ploy to cover the Excessive Force Violent Assault Incident by placing this I/M in the Segregation, and falsifying documents. (Disciplinary Reports and/or Incident Reports) Also, in doing so, all thats involve Maliciously and Sadistically violated this I/M Constitutional rights under the 8th and 14th AMENDMENTS. This Grievance is Reworded in truth to the best of the ability of this I/M, And is supported by this I/M own Incident Reports And the records of the CAMERA....→

**Relief Requested:** ① To have all(). It is written on the date of the Incident Explains. ② To be let out of Seg. Immediately. ③ Not to be placed in Stateville, NRC For fear of this I/M Safety. ④ For there to be a External Investigation. ⑤ For those involve to be Fired after the findings of wrong doings.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Devon Chew          R27399          5, 28, 19
Offender's Signature             ID#               Date

*(Continue on reverse side if necessary)*

---

**Counselor's Response (if applicable)**

Date Received: _____ / _____ / _____    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

_____      _____      _____ / _____ / _____
Print Counselor's Name          Counselor's Signature          Date of Response

---

**EMERGENCY REVIEW**

Date Received: _____ / _____ / _____    Is this determined to be of an emergency nature?

☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____      _____ / _____ / _____
Chief Administrative Officer's Signature          Date

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE (Continued)**

2 of 6

On the date of 4-26-19 and approx time of 2:35 PM, while this I/M was coming from a visit this I/M was on the way back to this I/M from living unit, this I/M walked passed the carts, that holds "Brown Bags" and "Bed Rolls." When a few other I/M's grabbed some of the "Brown Bags", this I/M along with the other I/M's went through the Metal Detector, then immediately rounded the corner into the hallway. (Now, in the Receiving Hallway / Staging Hallway, where there is a Recording camera over-head) Behind this I/M, still in the staging area, C/O S. Williams (12280) began very loud shouting; "Put that book, Put that book, You got me fucked up! I saw you." So then rounded the corner himself, the C/O had the officer ahead to stop the line. When C/O Williams caught up to this I/M the C/O stated, "Give it to me, give it to me now. Right Now!" The C/O was very loud and in this I/M personal space. This I/M told the C/O that this I/M did not have anything and that this I/M did not know what the C/O was talking about. The C/O then said, "I'm not about to play with you." C/O Williams then tried to forcefully turn this I/M around, by grabbing this I/M by the shoulders. When this I/M face hit the wall, this I/M pulled away and ask the C/O not to put his hands on this I/M. C/O Williams then said, "You don't tell me what to do, I tell ya Ass. So you refusing to be search?" All of this is on the over head hallway camera - Let the record show) All the while the C/O was yelling in this I/M face. This I/M told C/O Williams that this I/M was not refusing to be search, that this I/M just did not want the C/O touching this I/M again. By this time there was a lot more officers there, because of how loud C/O Williams was. C/O Williams then yelled to a lot C/O Brothers. "Shake him down, shake him down. Shake his A.S.S. down." C/O Brothers told this I/M to turn around for a shakedown, this I/M then complied and submitted to the shakedown w/ 'hout problem. When C/O Brothers had C/O Williams that this I/M did not have nothing, C/O Williams became louder by yelling, "I think I'm stupid. You gave it to one of these Motherfuckers, with your slick ASS." The C/O did not search any of the others) This I/M told the C/O that this I/M did not know what the C/O was talking about. The C/O stated, "Yeah alright Mark, yeah alright Mark?" This I/M said, "That's not my fucking name." The line was moving through the hall, with about 4 officers. The whole time C/O Williams was yelling very loud, berating this I/M the whole time) The C/O then yelled very loud, "What you gone hit me? Hit me! Hit me!" This I/M then stated out loud, this old ASS crazy." The C/O then said, "This old Motherfucker will kick your young ASS." By this time the line had come to a stop by this I/M living unit, there was some Sergeants present. C/O Williams then got louder, by yelling, "Sgt. Sgt. I want this Motherfucker walked to seg. Now! Now! Now!" By this time there was about 15 officers around, because of the yelling C/O Williams was doing. All of this was on camera - Let the record show) When Sgt Fox walked up to this I/M this I/M explains that the C/O disrupted that this I/M stole a "Brown Bag" and when I turn obvious that this I/M did not take one, the C/O became vindictive and disrespectful, that the C/O had single out this I/M. At the same time, C/O Williams was still yelling. The C/O then stated, "Apologize to me Right now, And, its over. Right Now!" This I/M the said to the C/O "I didn't do shit to you." The C/O then took this I/M ID and Sgt. Fox told this I/M to cuff up, so he could try to figure out what was going on. Sgt Fox walked this I/M to A holding cage on RB wing, he then ask the other officer that was there. This I/M told Sgt Fox, Sgt Fox left for about 10 min, he then return

And took the cuffs off this I/M And had this I/M walked back to this I/M living unit. About 20 min. later, C/O Williams came to this I/M cell door, threw this I/M I/O through the side of the door And then stated, "I Won't trip, I gut something for you. Real Soon. And you just be the last ticket I write before I retired." The C/O then laughed at this I/M from the other side of the door. This I/M immediately feared for this I/M safety..... [There is also A camera on the wing of RE, this I/M was in 306 — Let the record show]

That was the first incident that date yet not the last. (The latter also involved a C/O And physical contact/Excessive force/Violent Assault. Which was in the same exact location as the first incident. This I/M truly believe as though both incidents was not just a coincidence. This I/M truly believe the latter incident was a plan of attack on this I/M safety and/or life.)

Also, on the date of 4-26-19 And approx time of 7:45pm — Approx 5 to 6 hours after the first incident, in the same exact location— this I/M was coming from the showers in the staging area. This I/M again walked through the metal detector And rounded the door to the Receiving Hallway/Staging Hallway. (Which there is a camera that faces this threshold of the door. Let the record show that this I/M did not enter the hallway talking, that this I/M only said something after being addressed by the C/O. The record of the camera) This I/M came to stand at the back of the line with the rest of the I/M's. In the hallway there was approx 15 I/M's and 2 C/O's (C/O. M. Baler 11340 And A C/O A. Thomas. 3 gallery of RE) This I/M fell in line with the rest of the I/M's not talking, with this I/M shoulder on the wall. This is when C/O M. Baler out of nowhere turn to this I/M and asked this I/M was this I/M the last out the showers. This I/M told the C/O that this I/M wasn't sure that this I/M didn't know. Out of nowhere C/O Baler then said to this I/M in a taunting manner, "What you mean you don't know... You didn't see no. Dicks?" The C/O then backed up to the wall in laughter at his own statement. This I/M was not sure that this I/M heard the C/O correctly, and/or that the C/O would actually say something so disrespectful to "any" I/M in front of others — Especially with the TREA Program in the institution, which the C/O was blatantly in violation of — to make sure this I/M ask the C/O, "What did you just say to me?" This was ask in a even tone of voice, yet there was a noticeable irritation on this I/M face. The C/O had to stop laughing to acknowledge that there was a question from this I/M, the C/O then said in the the same manner as before, "You heard what I said, 'did you see any Dick?'" (This I/M would like to take this time to point out the Record of the camera in the hallway. Everything this I/M is reporting can be actually physically seen on camera, and one of Intelligence can compare the verbal words from this I/M Grievance here, and incident reports from the camera record. Way more so then one can from C/O Baler and C/O A. Thomas D.R. And/or incident reports. All reports was falsified by the C/O's. One will find that this I/M statements has been consistent throughout — the first and interview with I.A. state police, this Grievance— this whole time. Also let the record show that this I/M signal And/or submitted to a Polygraph test. That was never and/or not to be given.) This I/M was both embarrassed, shocked, And embarrassed. This I/M then said to the C/O, "You don't know me like that to be playing no me"

The C/o then stated, "You not nobody you heard what I said." Io. As this I/m being Homophobic and/or very embarrassed this I/m then stated "How you know I'm not gay And I don't like just like you." (Now at this point this I/m has two understanding that there was only two options that should happen. ① The C/o would take full control write this I/m a D.R. call the Lt. and have this I/m walked to Sep. for his own Persons. ② Another the C/o would take full control and see how is state in his environment, come with the comments and deescalate the situation. Yet instead the C/o did none of the above but the exact opposite.) C/o Butler put and written with his words and deamenor then said, "Shut the fuck up and turn around" This I/m was again shock that the C/o would take this position with this I/m. This I/m ask this C/o who was he the one getting mad when he was the one that started it claiming. C/o Butler told this I/m to "Shut the fuck up." This I/m then said, "Who do you think you talking to because I'm not no kid." This C/o then challenge this I/m by saying. "You not powered shit." This I/m said, "And you not either." C/o Butler then stated, "Yeah" ("Go nowhere else. Let the Record and the camera show that this is where definitely C/o Butler actions was unbecoming of a Professional officer or Resident Officer. Because it was clear that this I/m realize that this situation was not the typical circumstance between a C/o and a I/m. It felt to this I/m as though it was between two men on the streets or back alleys. To support this I/m theory, that this I/m is sure that the actions by C/o Butler and C/o A. Thompson was definitely premed. and that This I/m will give 4 obvious examples — that's in the record of the camera, and/or in the C/o's incident reports — that the C/o's attacked this I/m without being provoked by this I/m in any way shape nor form.) At this time, C/o Butler was leaning on the opposite wall as this I/m. ① The C/o then put his water down, and then advance on this I/m. The camera will show that the C/o approach was as stalk like as the C/o half circle this I/m by this time this I/m back was to the column and the camera. C/o Butler walked right up to this I/m face and said, "What you want to do you not no shit." (By this time this I/m was confuse, embarrassed, and a little scared, and unsure for this I/m safety. Because this I/m had never seen nor been in a situation such as this one.) This I/m then said, "What you want to do" because there was nothing else this I/m could think to say. ② C/o Butler then backed up from this I/m, then took off his watch, extra extra exhibited hard stepped back up to this I/m, and closed his fist, and hit this I/m in the right side of this I/m jaw. The hit shocked, surprised and stubbled this I/m. When this I/m came back to this I/m senses, this I/m did go after this C/o because this I/m knew nothing else to do. This I/m went past the flight fight or freeze method, this I/m chose to fight on instinct because this I/m was hit first and felt attacked by the C/o for no reason, (The whole time C/o A. Thomas said and/or did anything to deescalate the situation the whole time this I/m and C/o Butler was going back and forwards. By stopping C/o Butler and/or cuffing up this I/m, calling for back up getting in between this I/m and the C/o. Yet when A. Thomas saw his chance that C/o got involved the way the C/o was



Part.) Before this I/m would get to c/o B-ter to do Anything, from behind this f/c A. Thomas struck this I/m twice on the same side as c/o B-ter ③ At the same time c/o Thomas was striking this I/m c/o Thomas was also throwing his weight on this I/m in a "take down" fashion. Once this I/m hit the floor, out of nowhere about 4 c/o's came down on top of this I/m. It was then that this I/m was inform that it was a over head camera in the hallway, by hearing Lt. Adams say, "I told camera over y'all head dont do nothing to him. Get off him." This I/m was then walked to Health Care Unit to be look at being walked by Lt. Porter And another Lt. Lt. Porter talked with this I/m And would not let Anybody else deal with this I/m. Lt. Porter ask this I/m what happen in front of the house that did this I/m incident report. this I/m told the Lt. that this I/m was attacked by two c/o's. About 5 hour's later while talking with a outside investigator this I/m was inform that Lt. Porter was never suppose to be talking with this I/m. Because Lt. Porter is the Union Representative for c/o B-ter (If not for c/o Thomas And c/o Williams as well) This I/m now feels and believe that Lt. Porter blatantly rather interfered with what he knew was an ongoing investigations (Lt. Porter even has his signature on the falsified D.R that c/o B-ter wrote this I/m as the "Reviewing Officer") ④ The next day on 4-27-19, this I/m receive a D.R written by c/o B-ter with c/o A. Thomas as the witness And Lt. Porter as the Reviewing Officer. The D.R had 5 charges, with Violent Assault as the main one. (Let the record of the camera show that c/o B-ter falsified his whole report. This I/m is sure that both c/o's falsified their incident report) This I/m never spit on c/o B-ter and/or at him, and/or intimidated or threat threat the c/o. The record of the camera will also show that this I/m was never loud nor talking in the hallway but only talking when spoke to by the c/o. On 4-21-19 two State Police came to talk to with this I/m (Special Agent Matthew Kenney and Trooper Andrew Aguilar) It was later that a c/o inform this I/m that c/o B-ter was walked off the premises. Why is this I/m still in Segregation? Why do this I/m have to keep going to Stateville N.R.C for writ? This I/m feels as though the whole incident should not been seen through at Stateville N.R.C. (Especially the D.R.) Majority of the staff here knows about the incident and/or know who this I/m is by face or name. The Adjustment Committee found this I/m guilty of 206 304 313, Chair Person Lt. Best and Staff A. Gomez couldn't have looked at the camera to find this I/m guilty 313 304 206 or the D.R written by c/o Williams. Also to have the Chief Administrative S. Miles sigin/off on it As well. This I/m talked with Warden Bounds at N.R.C she said to this I/m, "I know you not gone get off "Scot Free". 7 he got walked out of here You can be sure of that" These staff members is either seen as they was covering for the c/o's and/or taking up for the c/o's. Or trying to punishing this I/m because the c/o set himself into trouble And not letting this I/m get off "Scot Free". This is my only plea, Please help me A.R.B

T.C.C

*Ex.F*

J.B. Pritzker
Governor



Rob Jeffreys
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

6/28/19
Date

Offender: *Chiu, Deuon*

ID#: *R27399*

Facility: *Lawrence*

This is in response to your grievance received on *5/31/19*. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted. _____ Griev Loc: *Sta. NRC*

Your issue regarding: Grievance dated: *5/27/19* Grievance Number: _____

- ☐ Transfer denied by the Facility
- ☐ Dietary _____
- ☐ Personal Property _____
- ☐ Mailroom/Publications _____
- ☐ Assignment (job, cell) _____
- ☐ Commissary / Trust Fund _____
- ☐ Conditions (cell conditions, cleaning supplies, etc.) *2019010031-Sta*
- ☒ Disciplinary Report: Dated: *4/26/19* Incident # *2019010031-Sta*
- ☒ Other *Staff- CO Boler, CO Thomas, Lt. Porter 4/26/19*

**Based on a review of all available information, this office has determined your grievance to be:**

- ☐ Affirmed, Warden _____ is advised to provide a written response of corrective action to this office by _____
- ☐ Denied, in accordance with DR504F, this is an administrative decision.
- ☐ Denied, this office finds the issue was appropriately addressed by the facility Administration.

- ☐ Denied as the facility is following the procedures outlined in DR525.
- ☐ Denied as procedures were followed in accordance with DR 420 for removal/denial of an offender from/for an assignment.
- ☒ Denied as this office finds no violation of the offender's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offender committed the offense cited in the report.

- ☐ Other: *Staff conduct issue moot as your allegation is currently being investigated. You will be notified by the facility of the outcome of the investigation.*

FOR THE BOARD: *Debbie Knauer*
Debbie Knauer
Administrative Review Board

CONCURRED: *Rob Jeffreys* 7/3/19
Rob Jeffreys
Acting Director

CC: Warden, *Lawrence* Correctional Center
*Chiu* , ID# *R27399*

*Mission:* To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.

www.illinois.gov/idoc